# EXHIBIT A



111 South Wacker Drive
Suite 4100
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Keith D. Parr, P.C.
Registered Patent Attorney
Direct Telephone: 312-443-0497
Direct Fax: 312-896-6497
kparr@lockelord.com

August 27, 2021

*VIA* **FEDERAL EXPRESS**

Zogenix, Inc.
Attention: Shawnte M. Mitchell
Executive Vice President, General Counsel,
and Secretary
5959 Horton Street, Suite 500
Emeryville, CA 94608

Zogenix, Inc.
Attention: AJ Acker
Senior Vice President, Global Regulatory
Affairs
5959 Horton Street, Suite 500
Emeryville, CA 94608

Zogenix International Limited
Attention: Legal Counsel
The Pearce Building, West Street,
Maidenhead, Berkshire SL6 1RL
United Kingdom

The Katholieke Universiteit Leuven
Attention: Paul Van Dun
Head, Intellectual Property
Waaistraat 6
Box 5105
3000, Leuven
Belgium

University Hospital Antwerp
Attention: Legal Counsel
Wilrijkstraat 10
Edegem
Belgium

RE:   **FINTEPLA® (fenfluramine hydrochloride oral solution), 2.2 mg/mL CIV**
      **ANDA No. 216218**
      Redacted

To Whom it May Concern:

Pursuant to 21 U.S.C. §§ 355(j)(2)(B)(ii) & (iv), Sections 505(j)(2)(B)(ii) & (iv) of the Federal Food, Drug and Cosmetic Act ("the Act"), you are hereby notified that Lupin Ltd. ("Lupin") has submitted to the United States Food and Drug Administration ("FDA") Abbreviated New Drug Application No. 216218 ("Lupin's ANDA") under 21 U.S.C. § 355(j), Redacted

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 2



Pursuant to 21 U.S.C. § 355(j)(2)(B)(iv), a detailed statement of the factual and legal bases upon which Lupin based its Paragraph IV Certification is attached hereto as **Exhibit A**.  This information is supplied for the sole purpose of complying with the above-referenced statutes.  Accordingly, Lupin does not waive, and to the contrary intends to preserve, any and all privileges, protections, and immunities afforded to it by the attorney-client privilege or attorney work product doctrine concerning the subject matter of this communication.

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 3



Lupin reserves the right to allege the same, similar, different, or new theories of noninfringement, invalidity, and unenforceability, and nothing in the Notice Letter or Detailed Statement shall be construed as to limit Lupin's rights to make any allegation in any subsequent litigation regarding any issue.

**Highly Confidential Notice:** This letter contains Lupin's highly confidential and proprietary information. Thus, Lupin considers this information a trade secret. You are not authorized to append this letter to any court pleading or submission or any other public disclosure of any kind, including without limitation any submissions to or filings with the U.S. Patent and Trademark Office or any other regulatory, governmental, or quasi-governmental agency or organization. *See In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 667 (D.N.J. 2004); 21 C.F.R. § 314.430(b)-(d); *Sw. Energy Co. v. Eickenhorst*, 955 F. Supp. 1078, 1085 (W.D. Ark. 1997), *aff'd*, 175 F.3d 1025 (8th Cir. 1999) (regarding the penalties for public disclosure of proprietary information).

Please do not hesitate to contact me at (312) 443-0497 if you have any questions about the contents of this letter.

Regards,

LOCKE LORD LLP

Keith D. Parr

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 4

<u>Enclosures</u>

<u>Exhibit A</u>:   Lupin's Detailed Factual and Legal Bases in Support of Its Paragraph IV
                Certification for Fenfluramine Oral Solution, 2.2 mg/mL CIV
<u>Exhibit B</u>:   Confidential Disclosure Agreement

patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.

('2815 patent at col. 20, ln. 32 – col. 22, ln. 63.)

**B.**   Redacted

    **1.**   Redacted

Independent claims 1 and 9 read as follows:

1.    A system for controlling distribution of a fenfluramine or pharmaceutical acceptable salt thereof for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network;

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

and wherein the central controller is further programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and to schedule a subsequent echocardiograph imaging for the patient which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

and further wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription.

*       *       *

9.      A system for controlling distribution of a medication for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

further programed to schedule a subsequent medical test for the patient prior to allowing entry of a subsequent prescription for fenfluramine or a

162

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

pharmaceutically acceptable salt thereof in the medication authorization field, wherein the subsequent medical tests is an echocardiographic imaging test,

wherein the central controller is programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and beyond which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription,

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof;

wherein the central controller coordinates subsequent tests for the patient;

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.



*See Freedman Seating*, 420 F.3d at 1358 (citing *Warner-Jenkinson*, 520 U.S. at 29); *see also Lockheed Martin*,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

324 F.3d at 1321 ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents.")



CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

### C.   Claims 1-9 are Invalid as Obvious Under 35 U.S.C. § 103

**1.**      Redacted

Claims 1-4 and 7-9 read as follows:

1.      A system for controlling distribution of a fenfluramine or pharmaceutical acceptable salt thereof for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network;

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically

165

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

and wherein the central controller is further programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and to schedule a subsequent echocardiograph imaging for the patient which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

and further wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription.

2.      The system according to claim 1,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof; and further

wherein the central controller coordinates subsequent tests for the patient.

3.      The system according to claim 2, wherein the central controller is programed to predict future test results and categorizes patient test data by reference to a predetermined model.

4.      The system according to claim 1,

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.

*       *       *

7.      The system according to claim 1,

wherein an output from an electronic device is used by the central controller to determine at least one of a change to a scheduled medical test for the patient and a change to a medication prescription for the patient; and further

166

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein the central data storage facility comprises a database of authorized medical professionals, the central controller outputting authorization of one or more medical professionals upon completion of one or more data fields indicative of the reputation of the medical professional in the field of epilepsy.

8. The system according to claim 1, wherein the designated subtype of epilepsy is Dravet Syndrome.

9. A system for controlling distribution of a medication for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

further programed to schedule a subsequent medical test for the patient prior to allowing entry of a subsequent prescription for fenfluramine or a pharmaceutically acceptable salt thereof in the medication authorization field, wherein the subsequent medical tests is an echocardiographic imaging test,

wherein the central controller is programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and beyond which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription,

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof;

wherein the central controller coordinates subsequent tests for the patient;

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.



Redacted

168

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

Redacted



169

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

170

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

171

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

2. Redacted

Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

**D.      Claims 1-9 are Invalid for Patent Ineligible Subject Matter Under 35 U.S.C. § 101**



Redacted

173

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

## XIII.  Analysis of the '331 Patent

The '331 patent is titled "Control System for Control of Distribution of Medication" and issued on March 16, 2021 to Richard Alistair Balfour Stewart and Anthony Clarke.  The '331 patent issued from U.S. Patent Application No. 16/126,150 ("the '150 application"), filed on September 10, 2018.  The '150 application is a divisional of the '862 application, filed on September 28, 2015, now the '2815 patent.

The '331 patent is currently assigned to Zogenix International Limited, according to the patent assignment listings of the USPTO, Reel No. 048647, Frame No. 0991.

### A.      The Claims

The '331 patent contains 10 claims, with claim 1 being the sole independent claim. Claims 1-10 read as follows:

1.      A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

174

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

8.      The method of claim 7 wherein the central controller authorizes each subsequent prescription to the one or more patients upon determination that the plot or trend demonstrates satisfactory maintenance of cardiovascular function.

9.      The method of claim 1 wherein the central computer aggregates and analyzes test results of one or more patients to assess safety trends.

10.     The method of claim 1 wherein the regulatory agency is the U.S. Food and Drug Agency (FDA).

('331 patent at col. 20, ln. 33 – col. 22, ln. 19.)

**B.**     ███████ Redacted ███████

**1.**     ███████ Redacted ███████

Independent claim 1 reads as follows:

1.      A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

wherein the initial medical test is selected from the group consisting of a medical examination by a physician, a genetic test, a physiological function test, and a medical imaging test,

wherein output of the first authorization is dependent upon satisfactory results of one or more of the initial medical tests entered into each patient's record, and

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

further programed to schedule one or more subsequent tests for each patient prior to allowing entry of a prescription for epilepsy medication in the medication authorization field,

wherein at least one of said subsequent medical tests is an echocardiographic imaging test which echocardiographic imaging test is performed in a manner which provides measurements of dimensions of one or more internal heart structures and heart flow-rate, and the patient receives or continues to receive medication only on entry of satisfactory echocardiography assessment results,

wherein the central controller inhibits the authorization output of the first or subsequent prescriptions upon the entry of unsatisfactory test results;

wherein the central controller manages one or more aspects of the authorized prescription for the patient selected from the group consisting of dosage amount; volume dispensed; dosing regimen; and intended time period of use, whereby overuse or misuse of fenfluramine is inhibited and

wherein aggregated and analyzed data is reported to a regulatory agency.



Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

2.      Redacted



Redacted

3.      Redacted

Redacted

### C.      Claims 1-10 are Invalid as Obvious Under 35 U.S.C. § 103

1.      Redacted

Independent claim 1 reads as follows:

178

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

1. A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

wherein the initial medical test is selected from the group consisting of a medical examination by a physician, a genetic test, a physiological function test, and a medical imaging test,

wherein output of the first authorization is dependent upon satisfactory results of one or more of the initial medical tests entered into each patient's record, and

further programed to schedule one or more subsequent tests for each patient prior to allowing entry of a prescription for epilepsy medication in the medication authorization field,

wherein at least one of said subsequent medical tests is an echocardiographic imaging test which echocardiographic imaging test is performed in a manner which provides measurements of dimensions of one or more internal heart structures and heart flow-rate, and the patient receives or continues to receive medication only on entry of satisfactory echocardiography assessment results,

wherein the central controller inhibits the authorization output of the first or subsequent prescriptions upon the entry of unsatisfactory test results;

wherein the central controller manages one or more aspects of the authorized prescription for the patient selected from the group consisting of dosage amount; volume dispensed; dosing regimen; and intended time period of use, whereby overuse or misuse of fenfluramine is inhibited and

wherein aggregated and analyzed data is reported to a regulatory agency.

179

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

Claim 2 depends from claim 1 and adds the limitation, "wherein the refractory epilepsy is selected from the group consisting of Dravet syndrome, Lennox-Gastaut syndrome, West syndrome and Doose syndrome."

Claim 3 depends from claim 1 and adds the limitation, "wherein the initial medical test is a genetic screening test."

Claim 4 depends from claim 1 and adds the limitation, "wherein the initial medical test is an echocardiographic test."

Claim 5 depends from claim 1 and adds the limitation, "wherein the subsequent medical test is a cardiovascular examination chosen from the group consisting of: an electrocardiogram (ECG), an echocardiogram and physiologic function measurements."

Claim 6 depends from claim 5 and adds the limitation, "wherein the medical examination utilizes an echocardiographic test."

Claim 7 depends from claim 5 and adds the limitation, "wherein the central controller logs the results of each medical examination to generate a plot or trend for the one or more patients."

Claim 8 depends from claim 7 and adds the limitation, " wherein the central controller authorizes each subsequent prescription to the one or more patients upon determination that the plot or trend demonstrates satisfactory maintenance of cardiovascular function."

Claim 9 depends from claim 1 and adds the limitation, "wherein the central computer aggregates and analyzes test results of one or more patients to assess safety trends."

Claim 10 depends from claim 1 and adds the limitation, "wherein the regulatory agency is the U.S. Food and Drug Agency (FDA)."



Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

183

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



**D.**    **Claims 1-10 are Invalid for Patent Ineligible Subject Matter Under 35 U.S.C. § 101**



184

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

**EXHIBIT B TO THE LETTER, DATED AUGUST 27, 2021**

**OFFER OF CONFIDENTIAL ACCESS TO APPLICATION**

Lupin Ltd. ("Lupin") hereby extends an offer of confidential access to ANDA No. 216218 that is in the custody of Lupin. The conditions for confidential access are provided in the following Confidential Disclosure Agreement (the "Agreement"). This offer and the Agreement are provided solely for the purpose of allowing Zogenix, Inc. and Zogenix International Limited (collectively "Zogenix"), The Katholieke Universiteit Leuven ("KU Leuven"), and University Hospital Antwerp ("UZA") to evaluate whether an action under 35 U.S.C. § 271(e)(2)(A) should be brought for the filing of ANDA No. 216218. This offer and the Agreement contain restrictions as to persons entitled to access the ANDA, and on the use and disposition of any information accessed, as would apply if a protective order was entered for the purpose of protecting trade secrets and other confidential business information. Under Section 505 of the Food, Drug and Cosmetic Act, a request for access to an application under an offer of confidential access is considered to be acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract.

## CONFIDENTIAL DISCLOSURE AGREEMENT



Pursuant to 21 U.S.C. § 355(j)(2)(B), Redacted

Pursuant to 21 U.S.C. § 355(j)(5)(C), the Notice Letter includes an Offer of Confidential Access to Lupin's ANDA for the sole purpose of determining whether an infringement action referred to in 21 U.S.C. § 355(j)(5)(B)(iii) may be brought with respect to the Redacted Section 355(j)(5)(C)(i)(III) expressly permits Lupin to impose restrictions "as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." By providing this Offer of Confidential Access, Lupin maintains the right and ability to bring a Declaratory Judgment action under 28 U.S.C. §§ 2201 et seq., pursuant to 21 U.S.C. § 355(j)(5)(C). As permitted by statue,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

this Offer of Confidential Access and Confidentiality Agreement ("Agreement") include the following terms and restrictions:



1. Redacted

2. Redacted

3. Redacted

2

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



5. Redacted

6. Redacted

7. Redacted

8. Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

9. Redacted

10. Redacted

11. Redacted

12. Redacted

13. Redacted

14. Redacted

15. Redacted

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



Redacted

16. Redacted

17. Redacted

5

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

ACCORDINGLY, intending to be bound by the terms of this Agreement and agreeing that it is in its respective commercial interest to be so bound, the undersigned does hereby acknowledge its agreement by its signature below.

Dated: ………………..          Company: ………………._____.

                                        By: ……………..……………..

                                        Name: ……………..……………..

Dated: ………………..          Company: ………………._____

                                        By: ……………..……………..

                                        Name: ……………..……………..

6

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

**Exhibit 1**

**ACKNOWLEDGEMENT**

The undersigned hereby acknowledges that he or she has received and read the OFFER OF CONFIDENTIAL ACCESS AND CONFIDENTIALITY AGREEMENT ("Agreement") executed by ……………………………………………………..on……………........... . The undersigned agrees to be bound by such terms, and agrees to submit to the jurisdiction of the United States District Court of Delaware for the purpose of enforcing the terms of this agreement.


Dated: ………………..                    ………………..………………..
                                        (Signature)