# EXHIBIT A



111 South Wacker Drive
Suite 4100
Chicago, IL 60606
Telephone: 312-443-0700
Fax: 312-443-0336
www.lockelord.com

Keith D. Parr, P.C.
Registered Patent Attorney
Direct Telephone: 312-443-0497
Direct Fax: 312-896-6497
kparr@lockelord.com

August 27, 2021

*VIA* **FEDERAL EXPRESS**

Zogenix, Inc.
Attention: Shawnte M. Mitchell
Executive Vice President, General Counsel,
and Secretary
5959 Horton Street, Suite 500
Emeryville, CA 94608

Zogenix, Inc.
Attention: AJ Acker
Senior Vice President, Global Regulatory
Affairs
5959 Horton Street, Suite 500
Emeryville, CA 94608

Zogenix International Limited
Attention: Legal Counsel
The Pearce Building, West Street,
Maidenhead, Berkshire SL6 1RL
United Kingdom

The Katholieke Universiteit Leuven
Attention: Paul Van Dun
Head, Intellectual Property
Waaistraat 6
Box 5105
3000, Leuven
Belgium

University Hospital Antwerp
Attention: Legal Counsel
Wilrijkstraat 10
Edegem
Belgium

RE:   **FINTEPLA® (fenfluramine hydrochloride oral solution), 2.2 mg/mL CIV
ANDA No. 216218
U.S. Patent Nos. 9,549,909; 9,603,814; 9,603,815; 9,610,260; 10,478,441; 10,478,442;
10,947,183; 10,452,815; and 10,950,331**

To Whom it May Concern:

Pursuant to 21 U.S.C. §§ 355(j)(2)(B)(ii) & (iv), Sections 505(j)(2)(B)(ii) & (iv) of the Federal Food, Drug and Cosmetic Act ("the Act"), you are hereby notified that Lupin Ltd. ("Lupin") has submitted to the United States Food and Drug Administration ("FDA") Abbreviated New Drug Application No. 216218 ("Lupin's ANDA") under 21 U.S.C. § 355(j), which contains

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 2

data from bioavailability or bioequivalence studies to obtain approval to engage in the commercial manufacture, use, or sale of fenfluramine oral solution, 2.2 mg/mL CIV ("Lupin's proposed ANDA product"). Lupin has received a Paragraph IV acknowledgement letter from FDA advising that Lupin's ANDA has been received for review and that FDA has made a threshold determination that Lupin's ANDA is substantially complete. The established name of the drug product that is the subject of Lupin's ANDA is "Fenfluramine Oral Solution, 2.2 mg/mL CIV." The active pharmaceutical ingredient of Lupin's proposed ANDA product is fenfluramine hydrochloride, and the proposed method of administration of Lupin's proposed ANDA product is oral. Lupin's ANDA identifies FINTEPLA® (NDA No. 212102) as the Reference Listed Drug and includes a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification") with respect to U.S. Patent Nos. 9,549,909 ("the '909 patent"), 9,603,814 ("the '814 patent"), 9,603,815 ("the '3815 patent"), 9,610,260 ("the '260 patent"), 10,478,441 ("the '441 patent"), 10,478,442 ("the '442 patent"), 10,947,183 ("the '183 patent"), 10,452,815 ("the '2815 patent"), and 10,950,331 ("the '331 patent"), which are listed in the FDA's Electronic Orange Book, *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") for FINTEPLA® fenfluramine hydrochloride oral solution, Eq 2.2mg base/mL. The '909, '814, '3815, '260, '441, and '442 patents are listed as having an expiration date of May 3, 2033. The '183 patent is listed as having an expiration date of December 20, 2036. The '2815 patent is listed as having expiration date of October 22, 2039. The '331 patent is listed as having an expiration date of September 28, 2035.

Lupin has certified that, in the opinion of Lupin and to the best of its knowledge, no valid claim of the '909, '814, '260, '3815, '441, '442, '183, '2815, and '331 patents will be infringed by the manufacture, importation, use, or sale of Lupin's proposed ANDA product. Pursuant to 21 U.S.C. § 355(j)(2)(B)(iv), a detailed statement of the factual and legal bases upon which Lupin based its Paragraph IV Certification is attached hereto as **Exhibit A**. This information is supplied for the sole purpose of complying with the above-referenced statutes. Accordingly, Lupin does not waive, and to the contrary intends to preserve, any and all privileges, protections, and immunities afforded to it by the attorney-client privilege or attorney work product doctrine concerning the subject matter of this communication.

In addition, for the sole purpose of assessing claims pursuant to 21 U.S.C. § 355(j)(5)(C), Lupin hereby offers to provide confidential access to Lupin's ANDA to Zogenix, Inc. and Zogenix International Limited (collectively "Zogenix"), The Katholieke Universiteit Leuven ("KU Leuven"), and University Hospital Antwerp ("UZA") subject to the restrictions set forth in the Offer of Confidential Access and the Confidential Disclosure Agreement ("the Agreement"), attached hereto as **Exhibit B**. If Zogenix, KU Leuven, and UZA desire to accept Lupin's offer of confidential access, please execute the Agreement and contact Keith D. Parr of Locke Lord LLP to make the appropriate arrangements.

Lupin hereby extends an offer of confidential access to ANDA No. 216218 that is in the custody of Lupin. The conditions for confidential access are provided in the attached Agreement. This offer and the Agreement are provided solely for the purpose of allowing Zogenix, KU Leuven,

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 3

and UZA to evaluate whether an action under 35 U.S.C. § 271(e)(2)(A) should be brought for the filing of ANDA No. 216218. This offer and the Agreement contain restrictions as to persons entitled to access the ANDA and on the use and disposition of any information accessed, as would apply if a protective order were entered for the purpose of protecting trade secrets and other confidential business information. Under Section 505 of the Food, Drug and Cosmetic Act, a request for access to an application under an offer of confidential access is considered to be acceptance of the offer of confidential access with the restrictions as to the persons entitled to access and on the use and disposition of any information accessed contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract.

The name and address of an agent in the United States authorized to accept service of process for Lupin related to Lupin's ANDA and Lupin's proposed ANDA product is:

> Keith D. Parr
> Locke Lord LLP
> 111 South Wacker Drive
> Chicago, IL 60606

Lupin reserves the right to allege the same, similar, different, or new theories of noninfringement, invalidity, and unenforceability, and nothing in the Notice Letter or Detailed Statement shall be construed as to limit Lupin's rights to make any allegation in any subsequent litigation regarding any issue.

**Highly Confidential Notice:** This letter contains Lupin's highly confidential and proprietary information. Thus, Lupin considers this information a trade secret. You are not authorized to append this letter to any court pleading or submission or any other public disclosure of any kind, including without limitation any submissions to or filings with the U.S. Patent and Trademark Office or any other regulatory, governmental, or quasi-governmental agency or organization. *See In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 667 (D.N.J. 2004); 21 C.F.R. § 314.430(b)-(d); *Sw. Energy Co. v. Eickenhorst*, 955 F. Supp. 1078, 1085 (W.D. Ark. 1997), *aff'd*, 175 F.3d 1025 (8th Cir. 1999) (regarding the penalties for public disclosure of proprietary information).

Please do not hesitate to contact me at (312) 443-0497 if you have any questions about the contents of this letter.

Regards,

LOCKE LORD LLP

Keith D. Parr

Zogenix, Inc.
Zogenix International Limited
The Katholieke Universiteit Leuven
University Hospital Antwerp
August 27, 2021
Page 4

<u>Enclosures</u>

| | |
|---|---|
| <u>Exhibit A</u>: | Lupin's Detailed Factual and Legal Bases in Support of Its Paragraph IV Certification for Fenfluramine Oral Solution, 2.2 mg/mL CIV |
| <u>Exhibit B</u>: | Confidential Disclosure Agreement |

patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.

('2815 patent at col. 20, ln. 32 – col. 22, ln. 63.)

**B.** 

**1.** 

Independent claims 1 and 9 read as follows:

1. A system for controlling distribution of a fenfluramine or pharmaceutical acceptable salt thereof for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network;

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

and wherein the central controller is further programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and to schedule a subsequent echocardiograph imaging for the patient which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

and further wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription.

*     *     *

9.     A system for controlling distribution of a medication for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

further programed to schedule a subsequent medical test for the patient prior to allowing entry of a subsequent prescription for fenfluramine or a

162

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

pharmaceutically acceptable salt thereof in the medication authorization field, wherein the subsequent medical tests is an echocardiographic imaging test,

wherein the central controller is programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and beyond which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription,

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof;

wherein the central controller coordinates subsequent tests for the patient;

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.



*See Freedman Seating*, 420 F.3d at 1358 (citing *Warner-Jenkinson*, 520 U.S. at 29); *see also Lockheed Martin*,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

324 F.3d at 1321 ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents.")



164

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



### C.    Claims 1-9 are Invalid as Obvious Under 35 U.S.C. § 103

1.

Claims 1-4 and 7-9 read as follows:

1.    A system for controlling distribution of a fenfluramine or pharmaceutical acceptable salt thereof for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network;

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically

165

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

and wherein the central controller is further programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and to schedule a subsequent echocardiograph imaging for the patient which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

and further wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription.

2.   The system according to claim 1,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof; and further

wherein the central controller coordinates subsequent tests for the patient.

3.   The system according to claim 2, wherein the central controller is programed to predict future test results and categorizes patient test data by reference to a predetermined model.

4.   The system according to claim 1,

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.

\*       \*       \*

7.   The system according to claim 1,

wherein an output from an electronic device is used by the central controller to determine at least one of a change to a scheduled medical test for the patient and a change to a medication prescription for the patient; and further

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein the central data storage facility comprises a database of authorized medical professionals, the central controller outputting authorization of one or more medical professionals upon completion of one or more data fields indicative of the reputation of the medical professional in the field of epilepsy.

8. The system according to claim 1, wherein the designated subtype of epilepsy is Dravet Syndrome.

9. A system for controlling distribution of a medication for treating symptoms of a designated subtype of epilepsy, the system comprising:

a data storage facility comprising a database of patient records including address details for the patient, each patient record having a medication authorization field for entering a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network, and acts as a centralized pharmacy for the medication, and confirms receipt of the fenfluramine or a pharmaceutically acceptable salt thereof at the patient address,

the central controller being programed to output via the network a first authorization of a first prescription of fenfluramine or a pharmaceutically acceptable salt thereof to a specific patient previously subjected to a first echocardiographic imaging test,

wherein output of the authorization is dependent upon the results of the first echocardiographic imaging test,

further programed to schedule a subsequent medical test for the patient prior to allowing entry of a subsequent prescription for fenfluramine or a pharmaceutically acceptable salt thereof in the medication authorization field, wherein the subsequent medical tests is an echocardiographic imaging test,

wherein the central controller is programed to output a time period over which use of the fenfluramine or a pharmaceutically acceptable salt thereof by a patient is authorized and beyond which subsequent test results for the patient are required to be received before authorizing additional fenfluramine or a pharmaceutically acceptable salt thereof for the patient,

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

wherein the central controller is programed to take an action dependent upon subsequent test results selected from authorizing an additional prescription, a change to the prescription and output of a proposal for cessation of the prescription,

a drug storage facility having fenfluramine or a pharmaceutically acceptable salt thereof stored therein;

wherein the central controller of the system is programed to monitor drug inventory in the drug storage facility and further programed to control dispatch of fenfluramine or a pharmaceutically acceptable salt thereof from the drug storage facility,

wherein the central controller is programed to authorize prescription related information regarding dosage, volume, count, regime, concentration and intended time period of use by the patient for fenfluramine or a pharmaceutically acceptable salt thereof;

wherein the central controller coordinates subsequent tests for the patient;

wherein the central controller is programed to prescribe a data format for test results for each patient, the data format being aligned with test data fields for each patient; and further wherein the central controller is programed to log test results for each patient over time, and to generate a plot showing a trend for each patient.



168

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



169

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



170

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



171

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



2.

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



**D.** **Claims 1-9 are Invalid for Patent Ineligible Subject Matter Under 35 U.S.C.
§ 101**



CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

██████████████████████████████████████████████

███████████████████████████████████████████████

## XIII.   Analysis of the '331 Patent

The '331 patent is titled "Control System for Control of Distribution of Medication" and issued on March 16, 2021 to Richard Alistair Balfour Stewart and Anthony Clarke.  The '331 patent issued from U.S. Patent Application No. 16/126,150 ("the '150 application"), filed on September 10, 2018.  The '150 application is a divisional of the '862 application, filed on September 28, 2015, now the '2815 patent.

The '331 patent is currently assigned to Zogenix International Limited, according to the patent assignment listings of the USPTO, Reel No. 048647, Frame No. 0991.

### A.   The Claims

The '331 patent contains 10 claims, with claim 1 being the sole independent claim. Claims 1-10 read as follows:

1.   A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

174

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

8.      The method of claim 7 wherein the central controller authorizes each subsequent prescription to the one or more patients upon determination that the plot or trend demonstrates satisfactory maintenance of cardiovascular function.

9.      The method of claim 1 wherein the central computer aggregates and analyzes test results of one or more patients to assess safety trends.

10.     The method of claim 1 wherein the regulatory agency is the U.S. Food and Drug Agency (FDA).

('331 patent at col. 20, ln. 33 – col. 22, ln. 19.)

**B.**      ████████████████████████

    **1.**      ██████████████████████████

Independent claim 1 reads as follows:

1.      A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

wherein the initial medical test is selected from the group consisting of a medical examination by a physician, a genetic test, a physiological function test, and a medical imaging test,

wherein output of the first authorization is dependent upon satisfactory results of one or more of the initial medical tests entered into each patient's record, and

176

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

further programed to schedule one or more subsequent tests for each patient prior to allowing entry of a prescription for epilepsy medication in the medication authorization field,

wherein at least one of said subsequent medical tests is an echocardiographic imaging test which echocardiographic imaging test is performed in a manner which provides measurements of dimensions of one or more internal heart structures and heart flow-rate, and the patient receives or continues to receive medication only on entry of satisfactory echocardiography assessment results,

wherein the central controller inhibits the authorization output of the first or subsequent prescriptions upon the entry of unsatisfactory test results;

wherein the central controller manages one or more aspects of the authorized prescription for the patient selected from the group consisting of dosage amount; volume dispensed; dosing regimen; and intended time period of use, whereby overuse or misuse of fenfluramine is inhibited and

wherein aggregated and analyzed data is reported to a regulatory agency.



177

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

2. 

**C.    Claims 1-10 are Invalid as Obvious Under 35 U.S.C. § 103**

Independent claim 1 reads as follows:

178

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

1.    A method of treating one or more refractory epilepsy patients with fenfluramine comprising:

providing a data storage facility comprising a database of patient records, each patient record having a medication authorization field for entering a first prescription for fenfluramine to treat the patient;

a central controller having one or more processors coupled to a communication network, which central controller is coupled to the data storage facility to read and write data to the data storage facility via the network; and

wherein the central controller controls transmission and receipt of data to and from the data storage facility via the network,

the central controller being programed to output via the network a first authorization of a first prescription of epilepsy medication to a patient previously subjected to one or more initial medical tests, each providing an initial medical test result,

wherein the initial medical test is selected from the group consisting of a medical examination by a physician, a genetic test, a physiological function test, and a medical imaging test,

wherein output of the first authorization is dependent upon satisfactory results of one or more of the initial medical tests entered into each patient's record, and

further programed to schedule one or more subsequent tests for each patient prior to allowing entry of a prescription for epilepsy medication in the medication authorization field,

wherein at least one of said subsequent medical tests is an echocardiographic imaging test which echocardiographic imaging test is performed in a manner which provides measurements of dimensions of one or more internal heart structures and heart flow-rate, and the patient receives or continues to receive medication only on entry of satisfactory echocardiography assessment results,

wherein the central controller inhibits the authorization output of the first or subsequent prescriptions upon the entry of unsatisfactory test results;

wherein the central controller manages one or more aspects of the authorized prescription for the patient selected from the group consisting of dosage amount; volume dispensed; dosing regimen; and intended time period of use, whereby overuse or misuse of fenfluramine is inhibited and

wherein aggregated and analyzed data is reported to a regulatory agency.

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

Claim 2 depends from claim 1 and adds the limitation, "wherein the refractory epilepsy is selected from the group consisting of Dravet syndrome, Lennox-Gastaut syndrome, West syndrome and Doose syndrome."

Claim 3 depends from claim 1 and adds the limitation, "wherein the initial medical test is a genetic screening test."

Claim 4 depends from claim 1 and adds the limitation, "wherein the initial medical test is an echocardiographic test."

Claim 5 depends from claim 1 and adds the limitation, "wherein the subsequent medical test is a cardiovascular examination chosen from the group consisting of: an electrocardiogram (ECG), an echocardiogram and physiologic function measurements."

Claim 6 depends from claim 5 and adds the limitation, "wherein the medical examination utilizes an echocardiographic test."

Claim 7 depends from claim 5 and adds the limitation, "wherein the central controller logs the results of each medical examination to generate a plot or trend for the one or more patients."

Claim 8 depends from claim 7 and adds the limitation, " wherein the central controller authorizes each subsequent prescription to the one or more patients upon determination that the plot or trend demonstrates satisfactory maintenance of cardiovascular function."

Claim 9 depends from claim 1 and adds the limitation, "wherein the central computer aggregates and analyzes test results of one or more patients to assess safety trends."

Claim 10 depends from claim 1 and adds the limitation, "wherein the regulatory agency is the U.S. Food and Drug Agency (FDA)."



CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



181

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



182

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



183

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



**D.**     **Claims 1-10 are Invalid for Patent Ineligible Subject Matter Under 35 U.S.C. § 101**

184

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED



185

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

**EXHIBIT B TO THE LETTER, DATED AUGUST 27, 2021**

**OFFER OF CONFIDENTIAL ACCESS TO APPLICATION**

Lupin Ltd. ("Lupin") hereby extends an offer of confidential access to ANDA No. 216218 that is in the custody of Lupin. The conditions for confidential access are provided in the following Confidential Disclosure Agreement (the "Agreement"). This offer and the Agreement are provided solely for the purpose of allowing Zogenix, Inc. and Zogenix International Limited (collectively "Zogenix"), The Katholieke Universiteit Leuven ("KU Leuven"), and University Hospital Antwerp ("UZA") to evaluate whether an action under 35 U.S.C. § 271(e)(2)(A) should be brought for the filing of ANDA No. 216218. This offer and the Agreement contain restrictions as to persons entitled to access the ANDA, and on the use and disposition of any information accessed, as would apply if a protective order was entered for the purpose of protecting trade secrets and other confidential business information. Under Section 505 of the Food, Drug and Cosmetic Act, a request for access to an application under an offer of confidential access is considered to be acceptance of the offer of confidential access with the restrictions as to persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract.

<u>**CONFIDENTIAL DISCLOSURE AGREEMENT**</u>

Pursuant to 21 U.S.C. § 355(j)(2)(B), Lupin has provided notice ("the Notice Letter") to Zogenix, KU Leuven, and UZA that Lupin has submitted an Abbreviated New Drug Application ("Lupin's ANDA") seeking approval to market fenfluramine oral solution, 2.2 mg/mL CIV ("Lupin's proposed ANDA product") before the expiration date of U.S. Patent Nos. 9,549,909 ("the '909 patent"), 9,603,814 ("the '814 patent"), 9,603,815 ("the '3815 patent"), 9,610,260 ("the '260 patent"), 10,478,441 ("the '441 patent"), 10,478,442 ("the '442 patent"), 10,947,183 ("the '183 patent"), 10,452,815 ("the '2815 patent"), and 10,950,331 ("the '331 patent"). The Notice Letter sets forth, among other things, a detailed statement of the factual and legal bases of Lupin's certification that no valid claim of the '909, '814, '260, '3815, '441, '442, '183, '2815, and '331 patents will be infringed by the commercial manufacture, use, importation or sale of Lupin's proposed ANDA product.

Pursuant to 21 U.S.C. § 355(j)(5)(C), the Notice Letter includes an Offer of Confidential Access to Lupin's ANDA for the sole purpose of determining whether an infringement action referred to in 21 U.S.C. § 355(j)(5)(B)(iii) may be brought with respect to the '909, '814, '260, '3815, '441, '442, '183, '2815, and '331 patents. Section 355(j)(5)(C)(i)(III) expressly permits Lupin to impose restrictions "as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." By providing this Offer of Confidential Access, Lupin maintains the right and ability to bring a Declaratory Judgment action under 28 U.S.C. §§ 2201 et seq., pursuant to 21 U.S.C. § 355(j)(5)(C). As permitted by statue,

1

this Offer of Confidential Access and Confidentiality Agreement ("Agreement") include the following terms and restrictions:

1.      This Agreement shall apply to all information, documents, and things relating to Lupin's ANDA made available or otherwise disclosed by Lupin or its counsel to Zogenix, KU Leuven, and UZA or their counsel in connection with the Notice Letter.  Such information and materials are hereinafter collectively referred to as "Confidential Information."

2.      Any copy, summary, extract, description, or other document containing Confidential Information shall be subject to the terms of this Agreement to the same extent as the information or document from which such copy, summary, extract, description, or other document was made.

3.      Access to Confidential Information shall be limited solely to:

    (a)      partners and associate attorneys and secretarial, paralegal, and staff personnel of not more than one outside law firm representing Zogenix, KU Leuven, and UZA provided, however, that such attorneys have been identified to Lupin in writing and such attorneys do not engage, formally or informally, in the prosecution of patents related to fenfluramine hydrochloride for Zogenix, KU Leuven, and UZA that would concern Lupin's ANDA; in any FDA counseling, litigation or other work involving FDA that would concern Lupin's ANDA; or in any work with the United States Pharmacopeia or any similar or related organization that would concern Lupin's ANDA;

    (b)      a single in-house attorney employed by Zogenix, KU Leuven, and UZA provided that such in-house attorney (i) is specifically identified in writing prior to such disclosures and (ii) does not engage, formally or informally, in the prosecution of patents related to related to fenfluramine hydrochloride for Zogenix, KU Leuven, and UZA that would concern Lupin's ANDA; in any FDA counseling, litigation or other work involving FDA that would concern Lupin's ANDA; or in any work with the United States Pharmacopeia or any similar or related organization that would concern Lupin's ANDA; and (iii) executes an acknowledgement of this Agreement in the form attached hereto as **Exhibit 1**; and

    (c)      any outside copying service, provided that before any such disclosure is made an authorized representative of said copying service executes an acknowledgement of this Agreement in the form attached hereto as **Exhibit 1**.

4.      No person to whom any Confidential Information is disclosed shall make any further disclosure thereof.

2

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

5.      As provided by 21 U.S.C. § 355(j)(5)(C)(i)(III), Zogenix, KU Leuven, and UZA's outside law firm(s), in-house counsel, and any other party receiving Confidential Information pursuant to this offer shall make use of the Confidential Information for the sole and limited purpose of determining whether an action for infringement of the '909, '814, '260, '3815, '441, '442, '183, '2815, and '331 patents can be brought.  By way of example only, the Confidential Information shall not be used:

    (a)      to prepare or prosecute any pending or future patent applications;

    (b)      in connection with the preparation or submission of any filing or communication with the United States Food and Drug Administration relating to Lupin's ANDA or Zogenix's NDA No. 212102, except to the extent such filing or communication is required by law or regulation; or

    (c)      in connection with any submission to the United States Pharmacopoeia or any similar or related organization relating to fenfluramine hydrochloride.

6.      Nothing contained herein shall oblige Lupin to disclose any information to Zogenix, KU Leuven, and UZA relating to Lupin's ANDA or any other subject matter whatsoever.

7.      Unless otherwise agreed in writing, Confidential Information, all copies thereof, and any extracts, descriptions, or summaries thereof, are to be destroyed or returned to Lupin immediately following the passage of 45 days after Zogenix, KU Leuven, and UZA's receipt of the Notice Letter, unless Zogenix, KU Leuven, and UZA commence a lawsuit against Lupin within such time.  In the event that Zogenix, KU Leuven, and UZA elect to file suit within 45 days from receipt of the Notice Letter, none of the information contained in or obtained from any Confidential Information shall be included in any publicly-available complaint or other pleading, and Zogenix, KU Leuven, and UZA's outside law firm(s) shall maintain the confidentiality of all Confidential Information pursuant to the terms of this Agreement until such time as a protective order is entered in such action pursuant to Rule 26, Fed. R. Civ. P.  In the event that Zogenix, KU Leuven, and UZA elect not to file suit following the expiration of the 45-day period, Zogenix, KU Leuven, and UZA shall provide written certification of their compliance with this provision within ten (10) days thereof and shall return any copy of the ANDA.  The confidentiality terms and restrictions set forth in the Agreement remain binding on Zogenix, KU Leuven, and UZA after the return of the ANDA.

8.      In the event that Zogenix, KU Leuven, and UZA seek permission from Lupin to make a disclosure not otherwise permitted under this Agreement, Zogenix, KU Leuven, and UZA shall identify the intended recipient(s), whether individual(s) or entities, in writing, sent by facsimile or electronic mail, to Lupin's designated counsel, Locke Lord LLP.  Such written request shall include a copy of the current curriculum vitae of such individual, as well as an executed acknowledgement of this Agreement in the form attached

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

hereto as **Exhibit 1**.  Lupin shall lodge any objection that it might have to such disclosure within five (5) business days from the receipt of the written request.  No Confidential Information shall be disclosed prior to the expiration of the five-day period.  No Confidential Information shall be disclosed if Lupin objects to such disclosure.

9.      Lupin shall not be deemed to have waived attorney/client privilege or attorney work product privilege by virtue of this Agreement or the disclosure of any Confidential Information hereunder.  Nothing in the Notice Letter or this Agreement shall be construed as an admission by Lupin regarding the validity, enforceability, or infringement of any United States patent.  Further, nothing herein shall be construed as an agreement or admission by Lupin with respect to the competency, relevance, or materiality of any such Confidential Information, document, or thing.  The fact that Lupin provides Confidential Information upon request of Zogenix, KU Leuven, and UZA shall not be construed as an admission by Lupin that such Confidential Information is relevant to the disposition of any issue relating to any alleged infringement of the  '909, '814, '260, '3815, '441, '442, '183, '2815, and '331 patents or to the validity or enforceability of that patent.

10.     This Agreement shall be governed in accordance with the laws of the state of Delaware without regard to its conflict-of-law rules.

11.     Zogenix, KU Leuven, and UZA may request access to Lupin's ANDA by executing a copy of this Offer where indicated and returning the executed copy to Keith D. Parr, at the following address: Locke Lord LLP, 111 S. Wacker Drive, Chicago, Illinois 60606, within the 45-day period.  Thereupon, the terms contained in this document shall be considered an enforceable contract between Lupin and the signing party.

12.     The Confidential Information disclosed is, and remains, the property of Lupin.  By providing the Confidential Information, Lupin does not grant Zogenix, KU Leuven, and UZA or any party a license in the Confidential Information.

13.     Should any provision set forth in this Agreement be found by a court of competent jurisdiction to be illegal, unconstitutional or unenforceable, the remaining provisions shall continue in full force and effect.

14.     When accepted by Zogenix, KU Leuven, and UZA, this document shall constitute the entire agreement of the parties with respect to the subject matter herein and may not be amended or modified except in writing executed by each of the parties subject to the amendment.

15.     Zogenix, KU Leuven, and UZA acknowledge that the violation of any provision of this Agreement will cause irreparable injury to Lupin, and that an adequate legal remedy does not exist.  Lupin, therefore, shall have the right, in addition to any other remedies available at law or in equity, to obtain from a court of competent jurisdiction an injunction to prohibit Zogenix, KU Leuven, and UZA from violating the terms of this Agreement. Zogenix, KU Leuven, and UZA agree that in such an action Lupin is entitled to recover

4

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

any and all damages, costs and expenses, including, but not limited to, all reasonable attorneys' fees, professional fees and court costs.

16.    By providing this Offer of Confidential Access to Application, Lupin maintains the right and ability to bring and maintain a Declaratory Judgment action under 28 U.S.C. §§ 2201 et seq., pursuant to 21 U.S.C. § 355(j)(5)(C).

17.    The name and address of an agent in the United States authorized to accept service of process for the applicant for the reasons stated above is:

> Keith D. Parr
> Locke Lord LLP
> 111 South Wacker Drive
> Chicago, IL  60606

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

ACCORDINGLY, intending to be bound by the terms of this Agreement and agreeing that it is in its respective commercial interest to be so bound, the undersigned does hereby acknowledge its agreement by its signature below.


Dated: ………………..          Company: ………………._____.

                                        By: …………….……………..

                                        Name: …………….……………..


Dated: ………………..          Company: ……………._____

                                        By: …………….……………..

                                        Name: …………….……………..

6

CONFIDENTIAL—UNAUTHORIZED DISCLOSURE PROHIBITED

**Exhibit 1**

**ACKNOWLEDGEMENT**

   The undersigned hereby acknowledges that he or she has received and read the OFFER OF CONFIDENTIAL ACCESS AND CONFIDENTIALITY AGREEMENT ("Agreement") executed by ……………………………………………………..on……………............ .  The undersigned agrees to be bound by such terms, and agrees to submit to the jurisdiction of the United States District Court of Delaware for the purpose of enforcing the terms of this agreement.


Dated: <u>………………..</u>      <u>……………….…………………..</u>
              (Signature)